I don't know whether this microphone is a PA or just a tape recorder. Is that better? No, apparently not. I'll try to project. First of all, the ineffective assistance of counsel claim in this case is cognizable on appeal because it's based on the record alone. And the trial record in this case is complete enough to support that claim. It shows that trial counsel told the district court that it considered the grand jury testimony to be essential. It needed it for cross-examination. And it also shows that when trial counsel did not – First of all, the statement isn't really a Janczak statement. And it's not Brady material because it's not exculpatory. So I don't get the problem. And why would your counsel – why would counsel have been ineffective in not using the material? Because all it would have done was emphasize the fact that these witnesses, at least two of them, had previously identified McDonald. I respectfully disagree. I know. But why? Okay. Number – several reasons. Number one, it's Janczak material because the district court ruled that it was Janczak material, and the government never – The district courts can rule all sorts of things. It doesn't make it true. Well – It just isn't. But we have an orderly system. And when a district court makes a ruling, that ruling can be challenged on appeal if it was objected to in a timely fashion in the district court to give the district court the opportunity to explain its thinking. That didn't happen here. The government did not object to the district court's ruling. The government never gave the district court the opportunity to explain its thinking. Okay. So you got a gift. You got the statement that's not really Janczak material. Not only do I have a gift, but I'm fortunate enough to have the law of this circuit on my side when it says that when you don't object in a timely fashion to a pretrial ruling, you cannot turn around and object to that ruling for the first time on appeal. So for that reason, because the district court made the ruling and the government never, ever objected at the time, it is Janczak material. A second reason that it's Janczak material is because the government told the district court it was Janczak material in an ex parte application in which they stated in writing under penalty of perjury that it was Janczak. That's fine. Let's not get hung up on whether it is or isn't. My point in saying that it isn't is just to underscore the fact that there's no prejudice. Can I give you the third reason? And that will show prejudice. My feeling is that what the government was trying to do in this case is to make an end run around the Janczak. The Janczak says that the Janczak is not Janczak. Kagan. Okay. Look, again, can we just focus on what's bugging me? Okay. Okay. Here's my point. Nothing in Ruiz's entire grand jury testimony would be remotely helpful to the defense. Wrong. Because every bit of it simply says these two witnesses previously identified MacDonald. What's your saying? That you don't want to underscore that. No wonder he didn't want to use it to put her back on the stand and cross-examine her, because it would have just underscored the trial testimony of the two witnesses who did identify him. First of all, he did want to use it, and he made a Rule 29 motion saying that his client was prejudiced because he didn't have it in a time when the defense wasn't able to use it. But here's the implication of what you're saying. In the State of California, they have preliminary hearings in criminal cases in which the precipient witness is a defendant. Mr. Chase, why don't you just answer my simple question, okay? I'm trying to. Okay. Why did it hurt the defendant? That's what I'm trying to explain. No, I don't need philosophy out there. I just need a fact-based answer. I'm trying to give you a strong example, an analogy. I want a fact-based answer in this record. Because trial counsel didn't get the chance to see the original statements that were made, and therefore, he can't compare that with discrepancies that may come up at the time of trial. What you're saying, in effect, is that every time there's a preliminary hearing in a criminal case in the State of California, it's perfectly acceptable to prevent defense counsel from seeing the transcript and impeaching precipient witnesses with contradictions between their original statement and their statements in trial. The whole purpose of the Jenks Act is to allow that. And that was frustrated here. And what the government did was they did an end run. The Jenks Act says when a precipient witness makes a statement, and that's presented to the grand jury, and then that precipient witness testifies during the trial, that's Jenks Act material, and defense counsel has a right to it. Now, in this case, the FBI agent's testimony was based on the statements of the precipient witnesses. The FBI agent wasn't there. She was not a precipient witness. She wasn't at the crime scene. She has no idea what happened. Her testimony was hearsay. It was based on statements from the precipient witnesses. Those statements were presented to the grand jury, and then those precipient witnesses came into the trial, and they testified. The heart and guts of the Jenks Act is that those statements should have been given to defense counsel, and the district court agreed. Okay. So now we've got them. All right? Here's my question. It's very, very simple. What difference do they make? The statement is consistent with the testimony given by the precipient witnesses at trial. Trial counsel was denied them. Okay. You're saying that they were consistent. The trial counsel said in his argument, in support of the Rule 29 motion, that if he had had that material. I know what he said. Thank you. Here's what he said, and I'll just say it. I'm aware of what he said. He said, if I could have had them, I could have used them. But he did have them. He did have them. He didn't use them, and that's the heart of your ineffective assistance claim. So all I'm asking is what the prejudice is. The heart of my ineffective assistance counsel claim is that he didn't ask for a continuance. He didn't object to the delay that he didn't get these statements until after the precipient witnesses had already testified and his cross-examination of them had taken place. Yes, he got them before the cross-examination of Ruiz, the FBI agent, but so what? Ruiz was not a precipient witness. Ruiz didn't see anything. So it doesn't, you know, but what he's saying here is that the omission, if he says, had I been in possession of that statement, I would have cross-examined Special Agent Ruiz and I would have used that as one more illustration of the bad nature of the eyewitness identification by Ms. Chan. But he didn't have the opportunity to do that. Okay. Thank you. Not for me. I'll reserve the rest of my time. All right. Mr. Silver. May it please the Court, Eric Silver on behalf of the United States. I would like to make clear at the outset that this was not an intent by the government and myself to claim in the district court that this was ginseng material. This was simply a redacting mistake in the grand jury transcript. Nevertheless, this was not ginseng material. As we indicated in our brief, I mean, it is well accepted that the court can affirm on any basis the record supports. And the defendant, in order to get reversal, has to show that there was an error in the case. And there was no error under the Jinx Act here because these statements were not ginseng material. First, they do not relate to the testimony of the case agent on direct. I mean, they are her statements under the Jinx Act as defined in subsection E. But she didn't testify about this. I mean, she did not testify about the eyewitness identifications of Chan, Loera, or Officer Paffs. And this is no different than the Pittman case from the Seventh Circuit in which you had a case agent's documents, most of which were summaries. But to the extent it wasn't, the documents went to willfulness. But in that case, the agent hadn't testified about willfulness. So it was not within the scope of direct as to the agent. Same with the Eleventh Circuit in Casa Mayor. There, the tape in question relates to the April 1983 conversation. But the witness hadn't testified about the April 1983 conversation. Well, the trial judge apparently ruled that they were Jinx Act material. So what do we do about that? Well, I think first, I'm not sure that the Court at the time was limiting itself to Jinx Act material. If you look at the first transcript that it ordered material disclosed from, I think it's undisputed that there were no Jinx Act material in that, in what the Court ordered disclosed. So it's not clear that the Court was limiting itself to the Jinx Act or saying that this was Jinx Act material. Nevertheless, I mean, this Court can compare what the witness, Special Agent Ruiz, testified to on direct. And this was not related to what she testified to. I mean, she testified to four things. She talked about her as an expert on the use of switch cars in robberies. She talked about her interview with Defendant Sims, and Defendant Sims admitting that the SUV belonged to his girlfriend. She talked about her interview with Defendant McDonald and what he was wearing and where he was arrested. And then finally, she talked about the amount of money that was found in the SUV and also the amount she personally had found in a pillowcase from the robbery. Her testimony did not relate to the eyewitness identifications of Chan, Luera, and Officer Papps. Now, it is true, as we indicated in our brief, that it did relate to the scope of those witnesses direct. I mean, it was related to what they had testified, that is Chan, Luera, and Officer Papps. But the problem is this was not a statement as to them. This was not their own words as to what the Jinx Act is designed for. In fact, it's apparent that this is the case agent's description of the identification, not what the witnesses had said. This is the case agent's opinion about whether the identification was positive or tentative. I mean, when the witnesses testified on the stand, they didn't say I made a positive identification of Defendant McDonald. They said he had the hair, the complexion, he was wearing the T-shirt. I mean, this is the case agent's opinion. And as the Supreme Court indicated in Palermo, it's not fair to have the witnesses impeached by somebody else's words. And in this case, it would have been the case agent's words. Ultimately, though, as Judge Reimer indicated, I mean, I think there's a problem of prejudice in this case. The testimony was, the information in the grand jury transcript that was not disclosed was consistent with the testimony of the witnesses on the stand. The Supreme Court in Rosenberg made clear in that circumstance that there would be harmless error. I mean, it's really two aspects in circumstances like this. To the extent it's not inconsistent with what the witness had said or to the extent it's consistent with what the witness had said, there's no impeachment value to it. And secondly, to the extent it was already set on direct, to the extent it has any impeachment value, it's already out there. I mean, if Chan positively identifying the defendant has any impeachment value, it was there when she positively identified the defendant in the courtroom. I mean, that's ultimately the problem in this case. I mean, this Court in Barker said, quote, a positive identification of the defendant is hardly useful to impeach. And two of the information here as to Officer Paffs and as to Chan, that's what was at issue was the positive identifications of the defendant. Now, there may have been some issue about Loera's identification because there it was a tentative identification. And perhaps if it was not disclosed it was a tentative identification, there could be some issue about that. But as we indicated in our brief, at Defendant McDonald's supplemental excerpt of record at pages 63 to 64, it was disclosed in the discovery in this case that the identification was tentative. The word tentative was used to describe that identification. And again, as I mentioned, I think on the stand there could be no question that his identification was at best tentative as he was unable to identify anyone as the driver of the vehicle in this case. And I would just note, finally, if the Court has no further questions on prejudice, I would just note on the issue of ineffective assistance of counsel, in Reyes-Platero, which is one of the case's defendant sites, this Court declined to consider ineffective assistance claim regarding a failure to request a departure and said there was nothing in the record that indicated the motive of the attorney in failing to make that request. And there's really nothing in the record, in this case, about the motive of defense counsel on why he didn't ask for continuous assistance, which the defendant alleges. So, I mean, I don't think there's any basis in this circumstance to reach the ineffective claim now, except, as we indicate in our brief, the government believes the Court can affirm because prejudice is an element of ineffective assistance of counsel. And because the defendant wasn't prejudiced by the belated disclosure of the GINSAC material, I don't think that under either claim there is any remedy. I do want to point out, just briefly, just to make clear, that this information, defense counsel said it was disclosed before the cross-examination of Special Agent Ruiz. It was not disclosed at that time, but it was disclosed before the case went to the jury. So the defendant did have the opportunity to recall Agent Ruiz if he believed that was necessary, and he had the opportunity to recall Chan or anyone else if he felt that that would be helpful. And I think, ultimately, what defense counsel's statement was to the District Court was that he believed Chan gave a tentative identification. He believed this would be impeachment. And as I indicated, it wouldn't be impeachment because it was positive, but I also think it's important to note that that view of the evidence in this case is not supported by the testimony of Chan, nor the jury's verdict in finding the defendant guilty. I mean, she picked him out of the courtroom and said, that is the driver of the car. I think the premise of defendant's objection in the District Court isn't supported. The panel has no further questions. If everyone will submit their comments. I have one. It's not about prejudice, but does the central district have a strategy question about time and delay in getting things out to the defense counsel? Some districts have different practices, I guess, but it seemed like there was a little bit of stonewalling in getting this redacted material out in time for counsel preparation of trial to make any use of it. And that's basically what he's been squawking about, I think, in his briefs and arguments. Well, I don't mean to give the Court that impression. I mean, it was the government, as is typically the practice, who requested that the Court allow the government to release the grand jury transcripts and we did receive the order. Because we can't disclose this information without an order of the Court. No, well, you got the order. And we disclosed what we believed at the time were all the statements, what I believed at the time were all the statements of the witnesses. And in this case, it really is. Well, so it sort of comes down to a redacting error, maybe, or something. Yes, it was a redacting error by myself. But I just wondered if we get off chasing rabbits about whether this really is jinxed material or really isn't jinxed material and so on. It doesn't get to the heart of the problem if there is a problem of delay in getting material to counsel so they can use it and find out if maybe in this case he would have found out it was unusable. But there is a little question in my mind about delay here. And you go to San Diego or some other district, it's an open file system. I mean, they get the stuff out in plenty of time. Yes, I mean, again, I don't mean to convey the impression that there was delay in disclosing the grand jury transcripts apart from the mistake in the redaction here. I note that the defendant could have, to the extent he alleged any harm from the delay, for example, he thought the jury would attach a negative impression to him recalling Chan to the stand to give the cross-examination. He could have asked for an instruction that it was the government's responsibility for failing to turn this over timely, which is what happened in the Tenth Circuit case in Woodley, which we cited in our briefs. I mean, that certainly would have been appropriate in this circumstance. There's nothing he could have said about it. We were ultimately responsible for providing timely disclosure under the Jinx Act. But I don't see how in the circumstances of this case the defendant was prejudiced by any delay. First, again, because it was consistent with the testimony, and then really it was inculpatory, at least as to everyone but Loera, and as to Loera it was duplicative of the information that had been disclosed. And again, the defendant had the chance, should he have wanted to do so, to recall any of the witnesses in this circumstance and could have attributed any problem in doing so to the government. And so, although there may be other situations where a redacting error like this may cause special issues related to delay, I just don't think that this is the case in which that's raised. If there's no further questions. All right. Thank you, Mr. Silver. Mr. Cease. Cease. Yes, I would respectfully disagree with the penalty. My view is that it was stonewalled. What happened was that the district court said, are there any matters any counsel wished to raise at this time? This was pretrial in the morning. And defense counsel said that he had been handed copies of the grand jury transcript. They were heavily redacted, and he objected to that. And he wanted the government to provide an unredacted copy to the court. Mr. Silver said that's fine with the government, Your Honor. The district court said, when can the court have it? Mr. Silver said, later this afternoon, I believe. The court said, after lunch. And he said, I'll take care of it during the lunch hour. And the court said, all right. Thank you. Now, after the lunch hour, this is what happened. Mr. Silver said, we have one matter, Your Honor. The government was unable to file the grand jury transcripts during the lunch. We informed Mr. Potter about that. I indicated we would file them first thing in the morning tomorrow. Now, what happened was defense counsel didn't get that until after Special Agent Ruiz had already testified. Now, one last thing. In Clancy v. The United States, cited in the briefs, the United States Supreme Court said that in applying the harmless error doctrine to Jenks Act violations, appellate courts cannot speculate whether the denied Jenks Act material could have been utilized effectively or trialed by the defense. I understand that you and I see this very, very differently. My feeling is that if you allow the government to start doing, in effect, hearsay grand jury hearings, where they never bring in the recipient witnesses, but instead they have an FBI agent relating the statements of the recipient witnesses, and then they take the position that the Jenks Act does not apply, in effect you're allowing the government to abrogate the Jenks Act and to sabotage it. And you're violating the due process rights of defendants. That's simply my position. Okay. Thank you very much. And the matter just argued will be submitted in court. We'll stand recess for the day. All rise. Thank you. Thank you.
judges: Goodwin, Cudahy, Rymer